Filed 12/18/23  P. v. Garcia CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E079889 |
| v. | (Super.Ct.No. FWV18001720) |
| VACA ARNULFO GARCIA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson, Judge.  Affirmed with directions.

Arielle Bases, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher Beesley and Britton B. Lacy, Deputy Attorney Generals, for Plaintiff and Respondent.

1

A jury found defendant and appellant Vaca Arnulfo Garcia guilty of attempted kidnapping and misdemeanor sexual battery. The trial court sentenced defendant to credit for time served, but left remaining custody credits unused. On appeal, defendant contends that the trial court was required to apply the excess credits to his parole term, and failure to do so resulted in an unauthorized sentence. The People concede that the excess credits must be applied to defendant's term. The People, however, contend that the court miscalculated defendant's custody credits. For the reasons set forth *post*, we hold that the trial court properly calculated defendant's custody credits, and the court's failure to apply excess credits to defendant's parole term resulted in an unauthorized sentence.

## FACTUAL AND PROCEDURAL HISTORY

A.     <u>PROCEDURAL HISTORY</u>

On February 9, 2022, a first amended information charged defendant with assault with intent to commit a sexual offense under Penal Code[1] section 220, subdivision (a)(1) (count 1); attempted kidnapping under sections 664 and 207 (count 2); and misdemeanor battery under section 243.4, subdivision (e)(1) (count 3). As to counts 1 and 2, the information also alleged that the offenses were violent felonies under section 667.5, subdivision (c). Moreover, as to count 2, the information alleged that the offense was a serious felony under section 1192.7.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

On August 26, 2022, a jury found defendant guilty of counts 2 (attempted kidnapping) and 3 (misdemeanor sexual battery), but could not reach a verdict on count 1 (assault with intent to commit a sexual offense). The trial court declared a mistrial as to count 1.

At the sentencing hearing on September 2, 2022, the trial court dismissed count 1, and sentenced defendant to the middle term of two years six months on count 2; and 180 days on count 3, to be served consecutively. The court also imposed a three- to four-year period of parole. The court and counsel agreed that defendant had accrued 1,817 total credits; the court deemed defendant's time served and ordered him to report to parole.

On September 26, 2022, defendant filed a timely notice of appeal.

B.     FACTUAL HISTORY

On May 7, 2018, Jane Doe, who was 18 years old, was working alone at her mother's salon and beauty supply store. Defendant, posing as a window cleaner, came into the salon and asked if Doe wanted the windows cleaned. Defendant had previously visited the store on two occasions preceding the incident to offer the same service; he was turned away by Doe's mother. When Doe declined defendant's offer, he continued to insist. Doe admitted that her mother was not at the salon.

Defendant then asked Doe to go outside so he could show her dust on the store's window. Once outside, defendant stood behind Doe and pressed his penis against her buttocks, and placed one hand on Doe's waist and the other on her vagina. Defendant asked Doe if her vagina was small. Doe then pushed defendant off, told him to get off her, and screamed for help.

3

Defendant grabbed Doe's arm and dragged her inside the store, towards the back where they were no longer visible to passersby. Defendant then grabbed the back of Doe's neck with his hand and pushed her head forward over a hairstylist's chair, again pressing his erect penis against her buttocks. Defendant then suddenly pulled away and ran out of the store.

After defendant left, Doe called her mother, who was pulling up to the store as they spoke. The mother saw defendant running toward another store and attempted to confront him. The mother heard defendant yelling, "I didn't do it," or something similar. Doe's Mother called the police and law enforcement arrived. An officer described Doe's demeanor as "Crying, distraught, symptoms of shock that I've experienced. Typical of someone that went through something traumatizing."

## DISCUSSION

### A.    THE TRIAL COURT IMPOSED AN UNAUTHORIZED SENTENCE

On appeal, defendant contends that his "excess credits should be applied to his parole term. The trial court's failure to do so resulted in an unauthorized sentence that must be remedied." The People agree that defendant's "sentence is unauthorized due to the trial court's failure to apply excess credits to his parole term."

Any sentence that fails to award a defendant all credits to which he is entitled is unauthorized. (See, e.g., *People v. Taylor* (2004) 119 Cal.App.4th 628, 647.) Sections 2900.5 and 1170 mandate that any credits in excess of the confinement period be applied towards a defendant's parole term. (§§ 2900.5, subds. (a) & (c), 1170, subd. (a)(3).)

Section 2900.5, subdivision (a), requires that credits apply first to one's "term of imprisonment" before being credited towards any base fines that have been imposed, and parole is explicitly defined as a term of imprisonment under section 2900.5, subdivision (c).

Section 1170, subdivision (a)(3), authorizes courts to deem a defendant's parole period served when his custody credits equal or exceed his total sentence. (See *In re Sosa* (1980) 102 Cal.App.3d 1002, 1005 ["Section 1170 explicitly declares that presentence credit applies against both the imprisonment and the parole portion of the sentence"].)

Courts have agreed that section 2900.5 mandates that excess credits apply toward parole terms. (*People v. Lamoureux* (2020) 57 Cal.App.5th 136, 143; see *People v. Steward* (2018) 20 Cal.App.5th 407, 414.) Where courts have declined to apply credits towards the supervisory portion of a sentence, the cases dealt with post-release community supervision and resentencing under Proposition 47. (§ 1170.18; *People v. Morales* (2016) 63 Cal.4th 399, 406-407; *People v. Espinoza* (2014) 226 Cal.App.4th 635, 638-640.)

Defendant's case, however, is governed by section 2900.5. Here, the court imposed a period of parole, not post-release community supervision, and defendant is appealing from his initial sentencing, not a resentencing.

In this case, at the sentencing hearing on September 2, 2022, the trial court denied probation and ordered that defendant's sentence be followed by a period of parole. The parties agreed that defendant had accrued 1,580 actual credits and 237 conduct credits,

which totaled 1,817 credits. The court then applied defendant's credits, deemed his time served, and ordered him to report to parole by September 9, 2022.

Thereafter, at a hearing on September 26, 2022, the trial court expressly found that count 2 (misdemeanor sexual battery) constituted a Tier 1 offense, and accordingly, extended defendant's period of parole to three to four years.

During both the September 2 and September 26 hearings, the trial court, prosecutor, and defense counsel failed to address the excess credits—the number of credits remaining after application of defendant's 1,817 credits to his custodial sentence—accrued by defendant. Defense counsel, therefore, did not argue that the court should apply defendant's excess credits to his parole term.

Hence, because the trial court failed to apply defendant's excess credits to his parole term, failure to do so resulted in a legally unauthorized sentence. (§ 2900.5, subds. (a) & (c); § 1170, subd. (a)(3); *People v. Taylor*, *supra*, 119 Cal.App.4th at p. 647.)

B.      THE TRIAL COURT PROPERLY CALCULATED DEFENDANT'S
          CUSTODY CREDITS

Although the People concede that defendant's extra credits should be applied to defendant's parole term, the People argue that the court miscalculated defendant's credits. "This is because pretrial custody in the state hospital due to incompetency affects custody and conduct credits differently."

"Historically, 'section 4019 has provided that defendants confined in specific facilities and various settings may earn conduct credit for performing assigned labor and for complying with applicable rules and regulations.' " (*People v. Shkrabak* (2023) 89

6

Cal.App.5th 943, 947-948 (*Shkrabak*).)  Defendants who were treated in state hospitals or other facilities were not statutorily eligible for conduct credit.  (*People v. Yang* (2022) 78 Cal.App.5th 120, 125 (*Yang*), citing *Peter v. Waterman* (1986) 42 Cal.3rd 565, 568-571.)

Effective January 1, 2019, Senate Bill 1187 amended former section 4019, which added subdivision (a)(8).  Subdivision (a)(8) provided that prisoners undergoing competency restoration treatment in county jail facilities would be eligible for conduct credits.  (Stats. 2018, ch. 1008, § 5.)  In *Yang*, the court noted: "[T]he legislative history confirms, Senate Bill 1187 was enacted to ensure that [incompetent to stand trial] defendants being held and treated in county jail would be entitled to earn conduct credits just as other jail inmates.  (Assem. Com. On Pub. Safety, Rep. on Sen. Bill No. 1187 (2017–2018 Reg. Sess.) as amended May 25, 2018, p. 5.)  Although legislative analyses reflected the Legislature's express awareness that [incompetent to stand trial] defendants in a state hospital were not statutorily or constitutionally entitled to conduct credit under [former] section 4019, the analyses disclosed no explanation why the Legislature—at that point—declined to similarly extend the availability of conduct credit to such defendants. (See, e.g., *ibid*.; Off. of Assem. Floor Analyses, 3d reading analysis of Sen. Bill No. 1187 (2017–2018 Reg. Sess.) as amended Aug. 23, 2018, p. 4; Sen. Com. on Public Safety, Rep. on Sen. Bill No. 1187 (2017–2018 Reg. Sess.) as amended Feb. 15, 2018, pp. 4–5.)" (*Yang*, *supra*, 78 Cal.App.5th at pp. 126-127.)

In 2021, Senate Bill 317 expanded section 4019, subdivision (a)(8), to provide that prisoners receiving competency treatment in a state hospital could also receive conduct credits.  (Stats. 2021, ch. 599, § 3, eff. Jan. 1, 2022.)  "The legislative history indicates

7

the bill was meant to 'ensure[] incompetent defendants are eligible for the same conduct credit as their competent counterparts, while receiving treatment in any treatment facility or as an outpatient, not just . . . county jail treatment.' " (*Yang*, *supra*, 78 Cal.App.5th at p. 127, quoting Assem. Com. on Appropriations, Rep. on Sen. Bill No. 317 (2021–2022 Reg. Sess.) as amended July 12, 2021, p. 2.)

Here, from the date of defendant's arrest on May 7, 2018, and up to and including his sentencing hearing on September 2, 2022, defendant spent 1,580 days in pretrial custody. During this period, defendant spent somewhere between 141 to 149 days in the hospital due to his incompetency to stand trial. The People, therefore, argue that the time spent by defendant at the hospital should be excluded from defendant's custody credits.

Defendant, however, makes an equal protection argument. Defendant contends that because "Defendants committed to a state hospital for competency treatment after Senate Bill 1187 went into effect are similarly situated to those defendants receiving competency treatment in county jail," and he "was ordered to receive competency treatment in a state hospital in March of 2019—after Senate Bill 1187 went into effect."

"To establish a meritorious claim under the equal protection clause, a defendant must show ' " that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' " [Citations.] '[A]n equal protection claim cannot succeed, and does not require further analysis unless there is some showing that the two groups are sufficiently similar with respect to the purpose of the law in question that some level of scrutiny is required in order to determine whether the distinction is justified.' [Citation.] The inquiry is not whether groups are similarly situated for all

8

purposes, but whether they are similarly situated with respect to the legitimate purpose of the particular law challenged." (*Shkrabak*, *supra*, 89 Cal.App.5th at p. 948.)

Two cases "have considered whether defendants receiving competency treatment in state hospitals are similarly situated to those receiving treatment in county jails. In *People v. Orellana* (2022) 74 Cal.App.5th 319, . . . the Sixth District Court of Appeal rejected an equal protection challenge similar to that in the current case, holding the two groups were not similarly situated. The *Orellana* court reviewed our Supreme Court's decision in *People v. Brown* (2012) 54 Cal.App.4th 314, which considered whether a legislative change that increased the rate at which prisoners could earn conduct credits applied to defendants who had served their time before the change, as well as to those who had served their time after the change." (*Shkrabak*, *supra*, 89 Cal.App.5th at pp. 948-949.)

In *Brown*, 54 Cal.App.4th 314, the "Supreme Court found the two groups were not similarly situated, stating: ' "the important correctional purposes of a statute authorizing incentives for good behavior [citation] are not served by rewarding prisoners who served time before the incentives took effect and thus could not have modified their behavior in response. That prisoners who served time before and after former section 4019 took effect are not similarly situated necessarily follows." ' [Citation.] The *Orellana* court read this passage to 'effectively preclude[] the court from deeming two groups similarly situated for purposes of earning conduct credits when the time in custody preceded the availability of incentive based credits.' " (*Shkrabak*, *supra*, 89 Cal.App.5th at p. 949.)

9

However, "[t]he First District Court of Appeal reached a different conclusion in *Yang*, . . . holding that defendants in both state hospitals and county jails are subject to the same standards and procedures and receive treatment for the same purpose. [Citation.] While the groups are placed in different locations, the *Yang* court concluded they are sufficiently similar to qualify for ' "some level of scrutiny' " under equal protection principles. [Citation.] The court distinguished *Brown,* concluding, 'Unlike the situation in *Brown*, defendant here is not advocating the position that [incompetent to stand trial] defendants whose confinement for competency treatment predated Senate Bill 1187's effective date are similarly situated to [incompetent to stand trial] defendants whose confinement postdated the law's effective date. Instead, the instant case concerns the disparate treatment of two groups of [incompetent to stand trial] defendants whose confinement for competency treatment postdated a statutory amendment that authorizes conduct credits only for those committed to a jail facility but not for those committed to a state hospital.' " (*Shkrabak*, *supra*, 89 Cal.App.5th at p. 949.)

After the court found "incompetent to stand trial defendants confined in state hospitals similarly situated to incompetent to stand trial defendants confined in county jails, the *Yang* court applied strict scrutiny to section 4019. The court reviewed the California Supreme Court decisions in *People v. Saffell* (1979) 25 Cal.3d 223, . . . *People v. Sage* (1980) 26 Cal.3rd 498, . . . and *People v. Caruso* (1984) 161 Cal.App.3rd 13, . . . each of which applied strict scrutiny to analyze disparate treatment for the award of conduct credits, and concluded the same standard should apply there. [Citation.] The

10

*Yang* court also rejected the Attorney General's argument that rational basis review should apply." (*Shkrabak*, *supra*, 89 Cal.App.5th at pp. 949-950.)

Applying the strict scrutiny test, the court in *Yang* "concluded the state could not establish it had a ' "*compelling* interest which justifies the law and then demonstrate that the distinctions drawn by the law are necessary to further that purpose." ' [Citation.] As in the present case, the Attorney General proffered two possible justifications for the law: (1) conduct credit creates an incentive for good behavior, and such incentives are unnecessary in state hospitals [citation], and (2) county jail treatment is an interim measure before transfer to a state hospital, and defendants who are confined in county jails 'are not so ill and disoriented that they are incapable of responding to credit incentives' " (*Shkrabak*, *supra*, 89 Cal.App.5th at p. 950.)

The *Yang* court, however, rejected both arguments by observing that "state hospitals—like jails—are structured environments governed by various rules. [Citations.] Thus, the same interest in incentivizing good behavior appears equally reasonable and workable for defendants receiving competency treatment in a state hospital where patients with varying issues and/or criminal histories or proclivities are housed" (*Yang*, *supra*, 78 Cal.App.5th at p. 136.)

The court went on to note that "Senate Bill No. 317 recently extended the availability of conduct credit to state hospital defendants, undermining the Attorney General's purported rationale for distinguishing the two groups." (*Shkrabak, supra,* 89 Cal.App.5th at p. 950.)

11

In addition, the *Yang* court stated that "Every defendant found incompetent to stand trial meets the same standard for commitment [citation], and . . . may be committed to either a jail facility or a state hospital depending on the availability of a bed." (Yang, supra, 78 Cal.App.5th at p. 137.) Therefore, the court found that it did not "make sense to draw a distinction between the two groups based on the extent of their impairments. [Citation.] Accordingly, the court concluded the defendant was entitled to conduct credit for the time he was in Napa State Hospital receiving treatment to restore him to competency." ' " (*Shkrabak*, *supra*, 89 Cal.App.5th at p. 950.)

Recently, in *Shkrabak*, after discussing the differences between *Yang* and *Orellana*, the Third District Court of Appeal found "the analysis in *Yang* more persuasive than *Orellana*." (*Shkrabak*, *supra*, 89 Cal.App.5th at p. 950.) The *Shkrabak* court stated: "*Orellana* viewed '*Brown* as compelling the conclusion that [incompetent to stand trial] defendants receiving competency treatment in a jail facility and [incompetent to stand trial] defendants receiving competency treatment in a state hospital are not similarly situated because the former group was incentivized to earn conduct credit after Senate Bill 1187's enactment while the latter group was not.' [Citation.] As *Yang* notes, however, 'the disparate treatment between these two groups of [incompetent to stand trial] defendants is precisely what is being challenged as unjustified.' [Citation.] Defendant's ability to make a claim based on disparate treatment should not be contingent on a legislative distinction between two groups if the distinction itself is the target of the claim. Thus, the two groups are sufficiently similarly situated to apply equal protection principles." (*Shkrabak*, at pp. 950-951.)

We find the reasoning of *Shkrabak* and *Yang* more persuasive than that of *Orellana.*  We agree with *Shkrabak* and *Yang* that prisoners undergoing competency treatment in a state hospital are similarly situated with those prisoners undergoing competency treatment in a county jail facility.  (*Shkrabak*, *supra*, 89 Cal.App.5th at pp. 950-951; *Yang*, *supra*, 78 Cal.App.5th at p. 129.)

At the sentencing hearing in this case, the trial court properly awarded defendant 1,817 credits, which included the time defendant spent in the state hospital.  The trial court, therefore, properly calculated defendant's custody credits.

## DISPOSITION

The trial court is directed to apply defendant's excess custody credits toward defendant's term of imprisonment, including his period of parole.  The trial court is directed to update the abstract of judgment and forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

CODRINGTON
J.

FIELDS
J.

13